**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In Re Subpoena to Federal Bureau of       )
Investigation, and United States Attorney's )
Office for the Southern District of Florida. )
                                            )
                                            )       Case No. 26-cv-60651-WPD
                                            )

## UNDERLYING CASE TITLE AND NUMBER

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Jane Doe, individually and on behalf of all   )
similarly situated,                            )
                                               )
Plaintiff,                                     )
                                               )       Case No. 25-cv-8520 (JSR)
v.                                             )
                                               )
Bank of America, N.A.,                         )
                                               )
Defendant.                                     )
                                               )

## BANK OF AMERICA'S RESPONSE TO NON-PARTIES' MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER

Ana María Cristina Pérez Soto
Florida Bar Number 96692
JONES DAY
600 Brickell Avenue
Brickell World Plaza, Suite 3300
Miami, FL 33131
(305) 714-9700
cperezsoto@jonesday.com

*Counsel for Bank of America, N.A.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

I.       The Underlying Lawsuit ...................................................................................... 3

II.      The At-Issue Subpoenas and Bank of America's Diligent Efforts to Obtain the
         Requested Information. ........................................................................................ 4

III.     The Government's Response ................................................................................ 6

ARGUMENT ....................................................................................................................... 7

I.       The Motion to Quash Is Premature. .................................................................... 8

II.      The Epstein Files Transparency Act Mandates Disclosure of the Requested
         Information and Supersedes All Applicable Regulations, Statutes, and Privileges. ......... 9

         A.       The Epstein Files Transparency Act Mandates Disclosure. ................... 9

         B.       The Epstein Files Transparency Act Supersedes the Department of
                  Justice's Touhy Regulations. ................................................................. 11

         C.       The Epstein Files Transparency Act Supersedes the Privacy Act and Bank
                  Secrecy Act. .......................................................................................... 13

         D.       The Epstein Files Transparency Act Supersedes Privileges, If Applicable ......... 14

III.     The Asserted Privileges Do Not Apply. ............................................................ 15

IV.      The Subpoenas Do Not Impose an Undue Burden. .......................................... 18

V.       BANA Has a Concrete and Urgent Need for the Requested Information
         Warranting Expedited Treatment. ..................................................................... 20

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ara v. Khan*,
2007 WL 1726456 (E.D.N.Y. June 14, 2007) ...........................................................................11

*Doe v. Bank of America, N.A.*,
2026 WL 380385 (S.D.N.Y. Feb. 11, 2026)................................................................................4

*Ellis v. Gen. Motors Acceptance Corp.*,
160 F.3d 703 (11th Cir. 1998) .............................................................................................11, 12

*FBI v. Fazaga*,
595 U.S. 344 (2022)....................................................................................................................14

*Fed. Election Comm'n v. Rivera*,
335 F.R.D. 541 (S.D. Fla. 2020).............................................................................................15, 16

*Fraser v. Wyeth, Inc.*,
992 F. Supp. 2d 68 (D. Conn. 2014)..........................................................................................19

*Healey v. GEICO Gen. Ins. Co.*,
2026 WL 74082 (M.D. Fla. Jan. 9, 2026)..................................................................................19

*In re Renco Grp. Inc.*,
164 F.4th 1336 (11th Cir. 2026) ................................................................................................17

*JA-Father Doe 1 v. Lazzaro*,
2021 WL 12349795 (D. Minn. Sept. 30, 2021).........................................................................11

*Kahn v. United States*,
2015 WL 3644628 (S.D. Fla. June 10, 2015) .......................................................................15, 16

*Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. U .S.*,
2013 WL 1966967 (M.D. Fla. May 13, 2013)............................................................................17

*Lillie v. ManTech Int'l. Corp.*,
2019 WL 653085 (C.D. Cal. Feb. 15, 2019)..............................................................................19

*Moore v. Armour Pharm. Co.*,
927 F.2d 1194 (11th Cir. 1991) ..................................................................................................12

*Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*,
    464 U.S. 30 (1983)..................................................................................................14

*Owens v. Alabama Dep't of Mental Health & Mental Retardation*,
    2008 WL 4722038 (M.D. Ala. Oct. 24, 2008)............................................................19

*Plaintiff A. v. Schair*,
    744 F.3d 1247 (11th Cir. 2014) ...........................................................................10, 11

*Schulte v. NCL (Bahamas) Ltd.*,
    2011 WL 256542 (S.D. Fla. Jan. 25, 2011) ..............................................................16

*Solomon v. United Specialty Ins. Co.*,
    2024 WL 2819141 (S.D. Fla. Mar. 14, 2024)............................................................16

*Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*,
    287 F.R.D. 680 (N.D. Ga. 2012)...............................................................................17

*Touhy v. Ragen*,
    340 U.S. 462 (1951)..................................................................................................12

*Tug Allie-B, Inc. v. United States*,
    273 F.3d 936 (11th Cir. 2001) ..................................................................................13

*U.S. Structural Plywood Integrity Coal. v. Forestwood Indus., Inc.*,
    2022 WL 18956171 (S.D. Fla. Nov. 28, 2022)..........................................................17

*United States v. Devall*,
    704 F.2d 1513 (11th Cir. 1983) .................................................................................13

*United States v. Van Horn*,
    789 F.2d 1492 (11th Cir. 1986) .................................................................................15

*W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*,
    2014 WL 1257762 (D. Colo. Mar. 27, 2014) ..............................................................8

*Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*,
    177 F.3d 1204 (11th Cir. 1999) .................................................................................15

**STATUTES**

5 U.S.C. § 552a(b) ..................................................................................................13

18 U.S.C. § 1595(a) .................................................................................................3

18 U.S.C. § 1595(b) ................................................................................................5, 10, 11

Epstein Files Transparency Act, Pub. L. 119-38, 139 Stat. 656 ............................................ *passim*

**RULES**

Fed. R. Civ. P. 26 ................................................................................................8, 17, 18

Fed. R. Civ. P. 45 ................................................................................................7, 18, 19

Local Rule 7.1(a)(3) ................................................................................................2, 9

**REGULATIONS**

12 C.F.R. § 21.11(m)(1) ................................................................................................14

28 C.F.R. § 16.24(c) ................................................................................................12

28 C.F.R. § 16.26(a) ................................................................................................12

31 C.F.R. § 1020.320(e) ................................................................................................13

31 CFR § 1010.970 ................................................................................................14

**INTRODUCTION**

Bank of America, N.A. ("BANA") is a defendant in a putative class action filed on behalf of victims of Jeffrey Epstein and currently pending in the Southern District of New York. The lawsuit seeks to hold BANA civilly liable for Epstein's crimes under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). After proceedings on BANA's motion to dismiss, two claims remain: (1) that BANA participated in a sex-trafficking venture with Jeffrey Epstein because it had a banking relationship with Epstein and some of his alleged co-conspirators, affiliated entities, and friends; and (2) that BANA obstructed law enforcement investigations into Epstein. To prevail on her trafficking claim, Plaintiff will need to show—at a minimum—that BANA provided special services to Epstein and those in his network. To prevail on her obstruction claim, Plaintiff will need to prove that BANA knew of a government investigation into Epstein for sex trafficking, BANA voluntarily and intentionally acted to obstruct that investigation, and BANA's obstruction proximately caused Plaintiff's injuries. A main focus for Plaintiff thus far has been whether BANA delayed filing Suspicious Activity Reports ("SARs") that (Plaintiff claims) would have alerted law enforcement to Epstein's trafficking activity and resulted in an earlier indictment. According to Plaintiff, BANA's failure to file SARs enabled Epstein's trafficking operation to continue until Epstein's arrest in New York in July 2019.

To defend itself in the underlying litigation, BANA served subpoenas on the Federal Bureau of Investigation ("FBI") and U.S. Attorney's Office for the Southern District of Florida ("USAO SDFL") seeking information on when law enforcement agencies opened investigations into Epstein and his associates and whether their finances were considered in connection with each investigation. This information is critical to BANA's defense. Additionally, the subpoenas requested information on whether there is a pending investigation related to Epstein's conduct. If

1

such an investigation exists, a stay is required under the TVPRA.  Instead of complying with the subpoenas or negotiating their scope—as other agencies and components of the DOJ are currently doing—the USAO SDFL prematurely moved to quash the subpoenas and sought a protective order, while at the same time indicating that it was open to continue discussions to narrow the dispute. Then, notwithstanding a federal judge's request, the USAO SDFL declined to participate in a March 9, 2026 court conference in SDNY where other federal agencies appeared to discuss the scope of compliance with their third-party subpoena requests.

The FBI and USAO SDFL's motion to quash the subpoenas and motion for a protective order should be denied.  First, the parties should continue negotiating to see if they can mutually agree to a set of disclosures that are responsive to the subpoenas.  *See* S.D.F.L. Local Rule 7.1(a)(3).  They are unlikely to be able to do so successfully if this motion remains pending.  But even if the parties are not ordered to resolve their disputes, the motion to quash is still improper. The Epstein Files Transparency Act, which mandates the release of the documents covered by the subpoena, supersedes other laws, regulations, and privileges that the Government may otherwise invoke to protect their documents from disclosure.  And some of the information sought is not even covered by a privilege that prevents disclosure in the first instance.  Indeed, most of the requested information merely seeks confirmation of facts—e.g., whether an investigation exists or whether a system was queried—and not material that would otherwise be analytical, privileged, or sensitive.  Moreover, the subpoenas are targeted and do not impose an undue burden on the FBI or USAO SDFL.  Quashal is therefore an inappropriate remedy.

Time is of the essence.  The underlying case has been on an expedited discovery timeline since Judge Rakoff issued his decision on BANA's motion to dismiss on February 11, 2026.  Fact discovery is set to close on March 16, 2026.  BANA needs the requested information before the

2

court-ordered deadline. For this reason, BANA has made a separate motion for expedited treatment, shortening of deadlines, and a hearing with sufficient time for compliance.

## BACKGROUND

### I. The Underlying Lawsuit.

Plaintiff filed this lawsuit on October 15, 2025. Case No. 25-cv-8520, Dkt. No. 1 (S.D.N.Y.). The complaint asserted six causes of action under the TVPRA for trafficking-related violations, obstruction, aiding and abetting, as well as state-law negligence claims. BANA moved to dismiss. Dkt. Nos. 38, 39. Judge Rakoff held a hearing. *See* Dec. 15, 2025 Minute Entry. At the end of hearing, Judge Rakoff invited Plaintiff to amend her complaint and stayed discovery. *Id.*

Plaintiff filed her amended complaint on December 29, 2025. Dkt. No. 57. The parties engaged in a round of supplemental briefing on the motion to dismiss. Dkt. Nos. 63, 68. Judge Rakoff issued his ruling on January 29, 2026. Dkt. No. 70. In that ruling, he dismissed four claims with prejudice—two for state-law negligence and two under the TVPRA. Two TVPRA claims remained—participation in a sex-trafficking venture and obstruction. No other information was provided. Judge Rakoff indicated that he would issue a decision explaining his ruling no later than February 13, 2026. *Id.*

Once the discovery stay was lifted, the parties resumed document production. BANA completed substantial production on February 9, 2026.

Judge Rakoff issued his decision on February 11, 2026. At that time, Judge Rakoff clarified the legal theories that remained in the case.

First, Plaintiff's TVPRA trafficking claim is controlled by 18 U.S.C. § 1595(a). The court held that a § 1595(a) civil participation claim "involves three elements: first, that the defendant participated in a commercial sex trafficking venture; second, that the defendant knew or should

3

have known that the venture either involved the perpetrator's use of force, the threat of force, fraud, or coercion to cause the victims to participate in sex or that the venture involved sex with victims who were under the age of 18; and third, that the defendant benefited from its participation in the venture." *Doe v. Bank of America, N.A.*, 2026 WL 380385, at *8 (S.D.N.Y. Feb. 11, 2026). Further, the court held that a bank cannot "participate" in a sex-trafficking venture simply by providing routine banking services. *Id.* Instead, under the court's interpretation, Doe must show that BANA offered preferential, "non-routine services that facilitated Epstein's sex trafficking venture." *Id.* One of the "non-routine services" that BANA provided, according to Doe, was the failure to "timely file SARs that the bank was legally obligated to file." *Id.* at *5.

Second, the court held that to prevail on the obstruction claim, Plaintiff "must show that [BANA] (1) knew of an effort to enforce the TVPA and (2) intentionally obstructed or attempted to obstruct that enforcement effort." *Id.* at *13. Plaintiff's obstruction claim hinges on her allegation that BANA willfully failed to timely file SARs. According to Plaintiff, the federal government was investigating Epstein's federal criminal liability for violating (among other laws) the TVPRA up to and following the return of the indictment against Epstein on or about July 6, 2019. Amended Compliant, Dkt. No. 57, at 104. Plaintiff alleges that the filing of those charges was delayed by BANA's actions—and that this intentional concealment allowed Epstein to continue funding his sex-trafficking venture through suspicious transactions that would otherwise never have happened. *See id.*

## II.    The At-Issue Subpoenas and Bank of America's Diligent Efforts to Obtain the Requested Information.

On February 20, 2026—approximately one week after Judge Rakoff issued his decision on BANA's motion to dismiss—BANA noticed subpoenas to the FBI and the USAO SDFL for the production of documents relating to investigations of Jeffrey Epstein and inquiries to BANA and

4

related entities.  *See* Dkt. No. 1-1, Case No. 26-cv-60651 (S.D. Fla.).  The subpoenas were served on February 23, 2026.  Around the same time, BANA also noticed and served subpoenas on the U.S. Attorneys' Office for the Southern District of New York and the Financial Crimes Enforcement Network ("FinCEN")—a bureau within the U.S. Department of Treasury that collects and analyzes information about financial transactions, including SARs.

The subpoenas seek documents and testimony relating to various investigations into Epstein and his associates.  As relevant here, the subpoena issued to the FBI seeks information reflecting the timing of its investigations into Epstein's sex-trafficking venture, including, but not limited to, Investigation No. 31E-MM-108062, opened in or around 2006 and referred to as "Operation Leap Year," and Investigation No. 50D-NY-3027571, opened in or around 2018 and resulting in the July 2019 indictment of Jeffrey Epstein.  *See* Dkt. No. 1-1.  In addition, BANA sought documents and testimony regarding the inquiries, if any, made to BANA as part of its investigations into Epstein's sex-trafficking venture and the consideration of SARs in connection with such investigations.  *Id.*  BANA even offered to cover reasonable costs related to the production of these materials.  *See* Dkt. No. 1-3, at 3, 7.

Some of the subpoenaed information is critical to BANA's defense.  BANA cannot have had knowledge of an investigation that did not exist.  And if an investigation did exist but law enforcement did not make inquiries about Epstein's finances, then BANA's actions (or alleged inaction) cannot be said to have prevented any federal investigation to enforce the TVPRA.  Other information ensures that the TVPRA's mandates are being followed.  Under the TVPRA, a civil action "shall be stayed during the pendency of any criminal action"—i.e., any "investigation and prosecution"—"arising out of the same occurrence in which the claimant is the victim."  18 U.S.C. § 1595(b).  Therefore, the existence of a pending investigation alone requires a stay.

BANA requested a response by February 27, 2026 because fact discovery closes on March 16, 2026.  Dkt. No. 1-1, at 4, 12.

## III.   The Government's Response.

The FBI and USAO SDFL responded on March 4, 2026.  Dkt. No. 1-4.  In a letter asserting various objections, they declined to authorize the requested disclosures, in part based on the assumption that the Department of Justice ("DOJ") had already released all of the files that BANA sought.  *See id.*

BANA responded by email later that same day.  *See* Pérez Soto Declaration In Support, Ex. A-1 at 2 (Email from Allison McQueen to Matthew Feeley (Mar. 4, 2026, 9:10 P.M.)).  BANA clarified that its request was not for the Government to produce again publicly disclosed documents, but rather that BANA was asking the Government to respond to the question of "whether all responsive documents have been released."  *Id.* at 2–3.  An affirmative answer could end the inquiry.  BANA also offered to "work with [the Office] to narrow the scope of the request." *Id.* at 2.  To that end, BANA proposed a more limited set of requests:

1. Whether there were any investigations beyond Investigation No. 31E-MM-108062 and Investigation No. 50D-NY-3027571.  Your letter referenced only these two investigations, but our letter and subpoena also sought information about other investigations, if any.

2. The dates on which each investigation (not just the two that we identified) opened and closed.

3. Whether USAO or the FBI made inquiries to Bank of America, Merrill Lynch, or BofA Securities in the course of each investigation, and if so, which investigation(s) and the date(s) of such inquiry.

4. Whether Jeffrey Epstein's finances were considered in connection with each investigation, and if so, which investigation(s).

5. The number of SARs considered by the USAO or the FBI in connection with each investigation, and to the extent that documents relating to those SARs have already been disclosed, which SARs were considered.

*Id.* at 2-3.  As is clear from these proposed requests, BANA does not seek specific investigation targets, victim identities, or other information that may implicate privileged or privacy interests. Instead, BANA's requests merely seek to confirm binary facts (whether an investigation exists and whether inquiries were made into Epstein's finances) or information that is not otherwise sensitive (the number of SARs that USAO SDFL or FBI considered, if any, in connection with its investigation and the dates of various investigations).

On March 5, Judge Rakoff directed that a representative from each government agency with which there was a discovery dispute (including any outside of New York) attend a discovery conference on March 9 to discuss these matters.  BANA immediately conveyed that direction to the USAO SDFL, providing the court's access link for remote participation and asking to confer in hopes that a resolution could be reached before the conference.  Pérez Soto Decl., Ex. A-1 at 1 (Email from Kristina Katz Cercone to Matthew Feeley (Mar. 5, 2026 4:29 P.M.)).

On the same day, the USAO SDFL filed this action seeking to quash the subpoenas issued to it and the FBI.  The next day, on March 6, the USAO SDFL responded to BANA's March 4 email, standing by its decision not to produce the requested files.  The office, however, maintained that it was "committed to reaching a workable compromise."  Pérez Soto Decl., Ex. A-2 at 1 (Email from Matthew Feeley to Allison McQueen (Mar. 6, 2026 9:27 A.M.)).  In a subsequent email, the USAO SDFL confirmed that it would not participate in the conference in SDNY, as it claimed to have "no dispute before the court in New York."  Pérez Soto Decl., Ex. A-3 at 1 (Email from Matthew Feeley to Allison McQueen (Mar. 6, 2026, 1:57 P.M.)).

## ARGUMENT

A subpoena should be quashed if it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).  A protective

7

order may be granted to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" if "good cause" is shown. Fed. R. Civ. P. 26(c)(1).

As a threshold matter, the Government's motion is premature. The Government filed the instant motion to quash before the parties had exhausted the possibility of resolving their dispute through the standard meet-and-confer process, and then it attempted to continue negotiations after its motion was on file. An order to confer, not quash, is the appropriate remedy here.

Even on the merits, denial is warranted. The Government seeks to hide behind statutes, regulations, and privileges that have been superseded by the recently enacted Epstein Files Transparency Act ("Epstein Act"). And many of the requests do not encompass privileged information in any event. Nor would the Government be unduly burdened by a response. BANA is asking for limited information and has offered to pay all reasonable costs. Under these circumstances, the Government is not entitled to quashal.

BANA has separately moved for expedited resolution of the Government's motion. If the requested information is not forthcoming, BANA must adapt and divert its resources to other lines of inquiry.

## I.    The Motion to Quash Is Premature.

This Court can deny the Government's request for the simple reason that it is premature. Both BANA and the Government remain committed to achieving a mutually acceptable agreement outside of court. As recently as the morning of March 6, the USAO SDFL represented that it "continue[s] to be committed to reaching a workable compromise." Pérez Soto Decl., Ex. A-2 at 1 (Email from Matthew Feeley to Allison McQueen). While the parties continue to negotiate in good faith, it is an inefficient allocation of judicial resources to seek this Court's intervention. *Cf. W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 2014 WL 1257762, at *20 (D.

8

Colo. Mar. 27, 2014) (suggesting that where parties have reached "agreements and understandings" on their own, a motion to quash is "either moot or premature" (citation omitted)). The parties should return to the negotiating table on equal footing and without the uncertainty imposed by the Government's pending motion. *See* Local Rule 7.1(a)(3) ("[C]ounsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion …."). Accordingly, BANA respectfully requests that the Court deny the instant motion so that the parties can continue to confer and negotiate—as BANA is doing with other federal law enforcement agencies without resort to judicial intervention.

II.    **The Epstein Files Transparency Act Mandates Disclosure of the Requested Information and Supersedes All Applicable Regulations, Statutes, and Privileges.**

The Government cites a number of regulations, statutes, and privileges as reasons for its failure to comply. The Epstein Act supersedes them all and mandates disclosure of BANA's requested information.

A.    **The Epstein Files Transparency Act Mandates Disclosure.**

The Epstein Act is a broad statute meant to make available to the public all files pertaining to the prosecution of Jeffrey Epstein. Specifically, the Epstein Act requires the Attorney General to:

> make publicly available in a searchable and downloadable format all unclassified records, documents, communications, and investigative materials in the possession of the Department of Justice, including the Federal Bureau of Investigation and United States Attorneys' Offices, that relate to …
>
> (1) Jeffrey Epstein including all investigations, prosecutions, or custodial matters.
>
> (2) Ghislaine Maxwell.
>
> …
>
> (4) Individuals, including government officials, named or referenced in connection with Epstein's criminal activities, civil settlements, immunity or plea agreements, or investigatory proceedings.

9

(5) Entities (corporate, nonprofit, academic, or governmental) with known or alleged ties to Epstein's trafficking or financial networks.

…

(7) Internal DOJ communications, including emails, memos, meeting notes, concerning decisions to charge, not charge, investigate, or decline to investigate Epstein or his associates. ….

Pub. L. 119-38, § 2(a), 139 Stat. 656.  The only exceptions are narrow: files that would "constitute a clearly unwarranted invasion of personal privacy" of victims; "depict or contain child sexual abuse materials"; "would jeopardize an active federal investigation or ongoing prosecution"; "depict or contain images of death, physical abuse, or injury of any person"; or contain information classified pursuant to executive order.  *Id.* § 2(c)(1), 139 Stat. 567.  The narrowness of the exceptions only confirms the breadth of DOJ's disclosure obligation under the Act.

The Epstein Act manifests Congress' will that a certain subset of records be released to the public.  Congress made a policy judgment that the documents that fall under the Epstein Act belong in the public domain—even if such records are not typically released under normal circumstances.

BANA's subpoenas fall squarely within the disclosure obligations of the Epstein Act.  The subpoenas merely request that the Government confirm that it has complied with its obligations under the law or that it come into compliance by releasing missing materials.  It does not ask for information that would jeopardize an active investigation and fall within one of the Epstein's Act exceptions.  Specifically, the subpoenas either seek historical information or request that the Government confirm the existence of an investigation (without requiring the Government to disclose the targets).

The Government discloses the existence of investigations in the TVPRA context all the time because the mere existence of an investigation triggers the TVPRA's mandatory stay provision.  *See* 18 U.S.C. § 1595(b)(1) ("Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the

claimant is the victim."); *see, e.g.*, *Plaintiff A. v. Schair*, 744 F.3d 1247, 1250 (11th Cir. 2014) (noting the district court had "stayed th[e] civil action" pending "a criminal investigation" and lifted the stay only "[a]fter that … criminal investigation ended"); *Ara v. Khan*, 2007 WL 1726456, at *1 (E.D.N.Y. June 14, 2007) (noting that "the United States filed a letter-motion reporting that 'on or about June 7, 2007, the government initiated a criminal investigation into the circumstances and conditions under which the plaintiff was employed by the defendants as possible violations of [the TVPRA]'" (alterations adopted)).  Indeed, the Government has no choice.  *See JA-Father Doe 1 v. Lazzaro*, 2021 WL 12349795, at *2 (D. Minn. Sept. 30, 2021) ("To effect the purpose of the mandatory stay provision, the United States must have an unconditional right to intervene and file a notice of stay or a motion to stay the civil action."); Motion to Intervene and to Stay Proceedings at 3, *Ara*,  No. 07-cv-01251 (E.D.N.Y. June 14, 2007), Dkt. No. 18 (moving to intervene because "Section 1595(b)(1) requires that the civil action be stayed pending the resolution of the government's criminal investigation and any resulting prosecution").  And if an investigation is not pending, then the government should confirm that, too, consistent with past practice.  *See, e.g., Schair*, 2012 WL 12864367, at *2 (N.D. Ga. Nov. 28, 2012) (noting the DOJ confirmed that a "federal criminal action [wa]s no longer pending").

The Epstein Act does not provide any exceptions to allow the Government not to respond. Nor do the other regulations, statutes, and privileges cited by the Government in its motion.

**B. The Epstein Files Transparency Act Supersedes the Department of Justice's *Touhy* Regulations.**

The Government first invokes *Touhy* regulations.  But it is black letter law that "regulations cannot trump the plain language of statutes." *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 709 (11th Cir. 1998) (alterations adopted) (citation omitted).  The Epstein Act mandates the release of documents related to Jeffrey Epsten possessed by the Department of Justice, subject to

11

a narrow set of exceptions.  *See* Pub. L. 119-38, 139 Stat. 656.  The Government's reliance on its power under the DOJ's *Touhy* regulations "to refuse a demand for testimony or production of documents," Mot. to Quash at 11, is therefore misplaced.

Under the Supreme Court's decision in *Touhy v. Ragen*, 340 U.S. 462 (1951), the Department of Justice may "promulgate regulations restricting employee testimony in private litigation," *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).  DOJ's *Touhy* regulations provide that Department officials should produce "material from Department files without further authorization from Department officials whenever possible." 28 C.F.R. § 16.24(c).  But the regulations limit such disclosures under certain circumstances, *see id.* § 16.26, which the Government asserts apply here, *see* Mot. to Quash at 11.  Specifically, the *Touhy* regulations direct Department officials to "consider" whether "disclosure is appropriate under the [operative] rules of procedure" and "substantive law concerning privilege."  28 C.F.R. § 16.26(a).  They state that "disclosure will not be made" where it would violate a statute, rule of procedure, or specific regulation.  *Id.* § 16.26(b)(1)–(2).  The regulations also provide that "disclosure will not be made" where it would interfere with or reveal law enforcement investigations or investigative techniques, "unless the Deputy or Associate Attorney General determines that the administration of justice requires disclosure." *Id.* § 16.26(b)(5), (c).

The Act necessarily supersedes agency regulations limiting the release of documents that fall within its purview.  *See Ellis*, 160 F.3d at 709.  Indeed, not only does the Act supersede the *Touhy* regulations themselves, it also supplants the laws, regulations, and privileges that the *Touhy* regulations purport to enforce.  *See infra* 14–18.

12

**C. The Epstein Files Transparency Act Supersedes the Privacy Act and Bank Secrecy Act.**

The Government cannot hide behind other statutes either. The Government argues that the requested information must be withheld under the Privacy Act or Bank Secrecy Act. Mot. to Quash at 16–17. But the Epstein Act supersedes these laws under basic principles of statutory interpretation.

It is a "long-standing principle that, if two statutes conflict, the more recent or more specific statute controls." *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 948 (11th Cir. 2001); *see, e.g.*, *United States v. Devall*, 704 F.2d 1513, 1515 (11th Cir. 1983) ("Upon review, we conclude that the provision of the later-enacted Bankruptcy Reform Act must prevail over the more general anti-assignment provision of the Social Security Act."). The Epstein Act is both more specific and more recently enacted than either the Privacy Act or the Bank Secrecy Act—and a direct conflict requires that the latter statutes yield.

Nevertheless, the Government cites the Privacy Act's admonition that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b); *see* Mot. to Quash at 16. This general admonition is superseded by Congress' specific direction in the Epstein Act to release all relevant records unless those files would "constitute a clearly unwarranted invasion of personal privacy" of the victim. Pub. L. 119-38, § 2(c)(1)(A), 139 Stat. 567. The Epstein Act thus does take account of privacy concerns, but it reflects Congress' judgment that, in this unique context, the balance between privacy and disclosure interests weight more heavily than usual in favor of disclosure.

13

Likewise, the Government objects that BANA's subpoenas "request information related to Suspicious Activity Reports (SARs)," which "are statutorily protected from disclosure under the Bank Secrecy Act."  Mot. to Quash at 17; *see* 31 C.F.R. § 1020.320(e) ("A SAR, and any information that would reveal the existence of a SAR, are confidential and shall not be disclosed except as authorized…."). But again, the Epstein Act balances interests related to secrecy against interests in publicly disclosing federal records in a unique context.  To the extent that the Epstein Act's disclosure requirements implicate the disclosure of SAR material that appears in DOJ's investigative files, the Epstein Act mandates that the Government disclose it.

Such disclosure would not conflict with the Bank Secrecy Act because the SAR privilege afforded by the Bank Secrecy Act is subject to regulatory exemptions in appropriate circumstances. 12 C.F.R. § 21.11(m)(1) (indicating that a bank must "request[] an exemption" by "submit[ting] a request in writing to the OCC"); 31 CFR § 1010.970(a) (noting that the Secretary of the Treasury can "make exceptions to or grant exemptions from the requirements of [the BSA]").  If compliance with this request hinges on obtaining exemptive relief from the OCC and FinCEN, the parties could work out how to seek such exemptive relief.  But the USAO SDFL is not entitled to unilaterally decide that it will not disclose SAR-related information without engaging in negotiations with BANA.

### D.  The Epstein Files Transparency Act Supersedes Privileges, If Applicable.

Privileges are a matter of common law and thus can be displaced by a federal statute that is "clear and explicit for this purpose." *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35 (1983).  The Epstein Act does displace applicable privileges.  It expressly requires disclosure of a broad swath of records, documents, communications, and investigative materials related to Epstein, including "[i]nternal DOJ communications," Pub. L. 119-38, § 2(a)(7), 139 Stat. 656, and it delineates the precise conditions under which material can

14

be redacted or withheld—none of which includes an evidentiary privilege.  Indeed, the Act would have little effect if these privileges remained intact.  *Cf. FBI v. Fazaga*, 595 U.S. 344, 355 (2022) (holding that the Foreign Sovereign Immunities Act did not displace state secrets privilege because "nothing about the operation of that provision is at all incompatible with the state secrets privilege").  Notably, one of the few carveouts the Epstein Act does have is for "an *active* federal investigation or ongoing prosecution, provided that such withholding is narrowly tailored and temporary."  Pub. L. 119-38, § 2(c)(1)(C), 139 Stat. 657 (emphasis added).  That carveout implies that no equivalent exception exists for closed investigations.  *See generally Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1209 (11th Cir. 1999) ("[The *expressio unius*] canon stands for the proposition that the mention of one thing implies the exclusion of the other.").

BANA seeks various types of information.  For the requests that relate to law-enforcement investigations that are not ongoing, given that the primary target of the investigations (Epstein) died seven years ago, there is no strong interest in maintaining any privilege that would otherwise attach to the information.  Or, if other active investigations remain open, the subpoenas only seek to know the fact of their existence as relevant to the TVPRA's mandatory stay provision.  *See supra* 10–11.  None of these things are protected by privilege.

## III.    The Asserted Privileges Do Not Apply.

Even if the Epstein Act did not supersede the privileges the Government asserts, those privileges do not apply even on their own terms.

*First*, the government asserts the law enforcement investigatory privilege.  Mot. to Quash at 12–15.  "The qualified law enforcement investigatory privilege protects from disclosure files and reports of criminal and civil law enforcement investigations."  *Fed. Election Comm'n v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020) (emphasis omitted).  It serves generally to "prevent

interference in an investigation," *id.* (emphasis omitted) (citation omitted), or "disclosure of information, such as law enforcement techniques and protocols, [that] would jeopardize future criminal investigations." *Kahn v. United States*, 2015 WL 3644628, at *2 (S.D. Fla. June 10, 2015) (citation and internal quotation marks omitted). But "the privilege will give way if the party can show need for the information." *Id.* (alterations adopted) (quoting *United States v. Van Horn*, 789 F.2d 1492, 1507 (11th Cir. 1986)).

Most courts in the Eleventh Circuit weigh ten different factors in deciding whether the qualified law enforcement privilege applies:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any actual criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the litigant's case.

Rivera, 335 F.R.D. at 547–48 (alterations adopted) (citation omitted). No one factor is dispositive. *See, e.g.*, *Kahn*, 2015 WL 3644628, at *3 (weighing the factors).

Here, the balance tips in favor of disclosure. As explained above, the information BANA requests is critical to its defense in high-profile and high-stakes litigation. *Supra* 5. And the risk of compromising current or future law-enforcement activities from such disclosure are low. *Supra* 10. The information BANA seeks is also unlikely to reveal techniques that would jeopardize future investigations: so much of the information has already been disclosed. And the rest of the requests—like whether the agencies queried banks for further information or used SARs—are

16

well-known investigatory devices or pertain to facts within the scope of the particular investigations into Epstein's sex-trafficking venture.

*Second*, the government relies on the work product doctrine. Mot. to Quash at 14–15. This doctrine generally protects documents, tangible items, and mental impressions prepared by attorneys or their agents in anticipation of litigation *Schulte v. NCL (Bahamas) Ltd.*, 2011 WL 256542, at *2 (S.D. Fla. Jan. 25, 2011). It shields legal strategies, mental impressions, and investigative notes, rather than raw facts. *Solomon v. United Specialty Ins. Co.*, 2024 WL 2819141, at *3 (S.D. Fla. Mar. 14, 2024). But BANA is not asking for investigative notes or mental impressions; it wants to know simple facts like whether an investigation existed or whether law enforcement made certain inquiries during the course of an investigation—not what an attorney or law enforcement officer thought about the strength of the investigation or evidence. In any event, the work product doctrine is a qualified privilege that can be overcome in these circumstances.

"Rule 26(b)(3) places a twofold burden on the party seeking to overcome the work product privilege and discover protected materials; the requesting party must show both substantial need and undue hardship." *Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 686 (N.D. Ga. 2012). BANA has a substantial need because, as previously explained, the requested information is critical to its defense in ongoing litigation. *Supra* 5. Separately, if an investigation is ongoing, then a stay of the SDNY litigation is mandated by statute. *Supra* 10–11. BANA faces undue hardship if the requested information is not disclosed. The information is uniquely in the possession of the Government—no other source is able to answer the same questions.

*Finally*, the Government alludes to a deliberative-process or attorney-client privilege, without explaining why they should apply here. Mot. to Quash at 14–15. Indeed, it does little

17

more than set forth the elements of the privileges. *Id.* The deliberative process privilege allows government agencies to withhold documents that are predecisional and deliberative (reflecting the consultative process). *U.S. Structural Plywood Integrity Coal. v. Forestwood Indus., Inc.*, 2022 WL 18956171, at *1 (S.D. Fla. Nov. 28, 2022); *Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. United States*, 2013 WL 1966967, at *2 (M.D. Fla. May 13, 2013). The attorney-client privilege protects confidential communications between a lawyer and their client that relate to the client's legal representation. *In re Renco Grp. Inc.*, 164 F.4th 1336, 1344 (11th Cir. 2026). To be clear, BANA does not seek "[c]ommunications between the USAO and any of its agency clients, such as the FBI." Mot. to Quash at 15. And it maintains that its requests do not implicate the consultative process or relate to legal representation during the course of an investigation. These privileges simply do not apply to BANA's requests.

## IV.    The Subpoenas Do Not Impose an Undue Burden.

BANA's requests are targeted and deigned to elicit specific, limited responses on topics that go to the core of the underlying litigation. The Government nevertheless asserts that the subpoenas are "unduly burdensome, vague, and over-broad." Mot. to Quash at 8 (citing Fed. R. Civ. P. 26(c)(1), 45(d)(3)). They are not.

To start, the Epstein Act already requires the DOJ to make an extraordinarily burdensome disclosure of Epstein-related material. The modest disclosures that BANA seeks pale in comparison. The Government paints an image that BANA requests the FBI and USAO SDFL to redo all of the DOJ's work and "independently search all records, which are publicly available… and designate people to sit for depositions related to the publicly available information" Mot. to Quash at 8–9. But BANA has already assured the Government that it is not seeking the production of any documents already disclosed, and simply asks the Government to verify whether any

18

records covered by the subpoena have *not yet* been publicly disclosed—and if such records exist, to disclose them. Pérez Soto Decl., Ex. A-2 at 2-3 (Email from Allison McQueen to Matthew Feeley).

Next, the process of compliance with BANA's subpoena does not pose an undue burden. BANA respects the Government's interest in orderly "operations and the proper use of officials' time" and is are not necessarily seeking "deposition of a government witness." Mot. to Quash at 8 (citations omitted). Indeed, BANA has indicated an openness to accepting "a declaration that addresses these topics in lieu of production." Pérez Soto Decl., Ex. A-2 at 3 (Email from Allison McQueen to Matthew Feeley). And BANA has even offered to cover the Government's reasonable costs. *See* Dkt. No. 1-3, at 3, 7.

Finally, the Government complains that BANA has not afforded it "reasonable time" to comply with the subpoena. Mot. to Quash at 9–10. "Although Rule 45 does not define what constitutes a reasonable time to comply, courts have generally made the determination of reasonableness on a case-by-case basis, considering the factors at work in the given case." *Healey v. GEICO Gen. Ins. Co.*, 2026 WL 74082, at *2 (M.D. Fla. Jan. 9, 2026) (citation and internal quotation marks omitted). Here, BANA is operating on a tight discovery timeline that is beyond its control. All told, BANA is required to complete extensive discovery within roughly one month of learning the contours of the claims it is facing. This case is far cry from one where the "emergency is of the [requesting party's] own making." *Cf. Owens v. Alabama Dep't of Mental Health & Mental Retardation*, 2008 WL 4722038, at *1 (M.D. Ala. Oct. 24, 2008). And nothing in the federal rules suggests that BANA's compliance period was unusually short. *See, e.g., Lillie v. ManTech Int'l. Corp.*, 2019 WL 653085, at *2 (C.D. Cal. Feb. 15, 2019) ("The federal rules contemplate that a trial subpoena may be served fewer than fourteen days in advance, and courts

19

have declined to quash subpoenas where parties provided fewer than eleven days."); *Fraser v. Wyeth, Inc.*, 992 F. Supp. 2d 68, 94 (D. Conn. 2014) (describing how the court had denied a motion to quash where "[o]n the first day of trial, Plaintiffs subpoenaed one of Wyeth's former executives … to testify live at trial seven days later").

## V. BANA Has a Concrete and Urgent Need for the Requested Information Warranting Expedited Treatment.

A resolution to the current discovery dispute is needed imminently. As set forth in BANA's separate motion to expedite, discovery in the SDNY litigation is scheduled to close on March 16—after which BANA will be unable to compel disclosure of the requested information. And if the Government is ordered to produce the requested information and confirms that there is an active investigation, a stay of the underlying investigation is mandatory. Accordingly, expedited relief is warranted.

## CONCLUSION

For the foregoing reasons, this Court should deny the motion to quash and for a protective order and grant any other relief the court deems just and proper.

Dated:  March 9, 2026

Respectfully submitted,

*/s/ Ana María Cristina Pérez Soto*
Ana María Cristina Pérez Soto
Florida Bar Number 96692
JONES DAY
600 Brickell Avenue
Brickell World Plaza, Suite 3300
Miami, FL 33131
(305) 714-9700
cperezsoto@jonesday.com

*Attorney for Bank of America, N.A.*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 9, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

/s/ *Ana María Cristina Pérez Soto*
Ana María Cristina Pérez Soto

22